UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 3:15-CR-36 |
| v. | (MARIANI, J.) |
| ROBERT CAGLE, | (SAPORITO, M.J.) |
| Defendant. | |

# **MEMORANDUM**

This matter is before the court on the motion of the defendant, Robert Cagle, for reconsideration of detention order. (Doc. 88).

Cagle, an inmate at the Lackawanna County Prison (LCP), while currently awaiting a supervised release revocation hearing, seeks his release from custody based on prison conditions at the LCP and the inherent risk posed by his being confined in close quarters to a large number of other inmates during the COVID-19 global pandemic given his health risk of suffering from a heart ailment. In his motion, Cagle has certified that the assigned assistant United States attorney does not concur in his motion. (Doc. 88-2). Defense counsel filed a notice indicating that the parties have been unable to resolve the motion. (Doc. 89). Cagle filed a brief in support of his motion (Doc. 92) and the government filed a

brief in opposition to the defendant's motion. (Doc. 90). We conducted a telephonic hearing, with Cagle's consent, on April 24, 2020. The matter is ripe for a decision. For the reasons set forth herein, we will deny the motion.

## I. Statement of Facts

On September 11, 2015, Cagle was sentenced by the Honorable Robert D. Mariani to a term of forty-eight months' imprisonment followed by three years of supervised release as a result of his convictions for aggravated identity theft and access device fraud. (Doc. 66). While on supervised release, the Wilkes-Barre Township Police Department arrested and charged Cagle with forgery, identity theft, and trademark counterfeiting violations on December 4, 2019. As a result of that arrest, Cagle was held at the Luzerne County Prison in lieu of $5,000 bail. Shortly thereafter, Cagle posted bail and was released.

Soon after his release, Cagle had conversations with his supervising federal probation officer who advised Cagle to immediately report to the federal probation office. Upon his failure to report, a warrant for his arrest was issued on December 10, 2019. (Doc. 83). Cagle was arrested on the warrant on December 23, 2019.

The new state charges resulted in the filing of a petition to revoke Cagle's supervised release. The undersigned United States magistrate judge conducted an initial appearance with Cagle present on December 23, 2019. At that hearing, Cagle waived a probable cause hearing and was ordered detained to await further proceedings before Judge Mariani. (Doc. 86). In his brief in support of his motion for reconsideration, Cagle proffered that he is 56 years old and suffers from a heart ailment and diabetes which makes him suspectable to COVID-19 in a prison setting. (Doc. 92, at 3). However, at his telephonic hearing on April 24, 2020, Cagle testified that he does not have diabetes. He also testified that his concerns about contracting COVID-19 relate to losing a couple family members, and respiratory problems on his mother's side of his family. He did not testify about any heart ailment. He did state that he underwent cancer testing which had not yet been completed at the time of his incarceration in December 2019.

Further, Cagle proffered that, if he is released, he would live with his aunt, who resides in Scranton, Pennsylvania. His aunt testified at the telephonic hearing and stated that she is willing to allow Cagle to live in her residence.

In its brief, the government proffered that: (1) the FBI learned that Cagle had been continually involved in federal crimes before his arrest in 2019; (2) Cagle faces a criminal investigation involving new federal crimes including multiple counts of aggravated identity theft, bank fraud, and access device fraud arising out of Cagle's travels throughout Pennsylvania and New Jersey in rented vehicles holding numerous stolen identities in the form of driver's licenses and credit cards; (3) Cagle made frequent trips to the Lord & Taylor store in Bala Cynwyd, Pennsylvania, where he attempted to open credit card accounts by using stolen identities; (4) Cagle made frequent trips to high-end shopping malls at various locations in New Jersey where he entered Lord & Taylor and Macy's stores and attempted to carry out similar types of fraudulent activities; (5) video surveillance captured Cagle in Bridgewater, Hillsborough, and Rockaway, New Jersey, completing various credit card applications while using stolen identities, including dates of birth and social security numbers; (6) he stole hundreds of dollars in merchandise from Kohl's department stores in New Jersey and in Dickson City, Pennsylvania, by using stolen identities; and (7) in December 2019, in a recorded interview by FBI agents, Cagle admitted that: he is in the

business of stealing identities; he is part of a larger network of identity thieves; the hub of this network is located in New York; he targets high-end electronic devices; and he works with accomplices to accomplish his criminal activity (Doc 90, at 5-7).

## II. Discussion

### a. COVID-19 Global Pandemic

We are mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents.[1] "COVID-19 is the infectious disease caused by the novel coronavirus." *United States v. Roeder*, ___ Fed. App'x ___, 2020 WL 1545872, at *1 (3d. Cir. Apr. 1, 2020) (per curiam). We are also cognizant that the President of the United States has declared a national emergency and the Governor of Pennsylvania has declared a state of emergency and issued a stay-at-home order through April 30, 2020, which has been extended to May 8, 2020, for some counties and June 4, 2020, for the majority of counties—including Lackawanna County, where the defendant is detained at LCP.

---

[1] World Health Org., *WHO Characterizes COVID-19 as a Pandemic* (Mar. 11, 2020), https://www.who.int/emergencies/diseases/novel-coronavirus-2019/events-as-they-happen.

Further, the Governor has ordered all schools to remain closed for the remainder of the 2019-2020 academic school year. We also recognize that public health officials have strenuously encouraged the public to practice "social distancing," to hand-wash and/or sanitize frequently, and to avoid close contact with others—all of which present challenges in detention facilities. *See Roeder*, 2020 WL 1545872, at *2; *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *2 (D. Md. Mar. 17, 2020).

### *b. Conditions of LCP*

Cagle alleges that prisons in general are ill-equipped to mitigate the dangers associated with COVID-19. Inmates cycle in and out of detention facilities from all over the country and those who work in prisons leave and return without definitive screening. He makes no specific observations about LCP other than to allege that prison visits with counsel are limited in that counsel can only speak to Cagle by telephone through a glass screen, all of which makes it difficult to review documents and physical evidence to prepare an adequate defense.

The government proffered in its brief and at the hearing that LCP has reported no positive COVID-19 cases among its inmate populations and only one corrections officer who has tested positive but since

6

recovered. (Doc. 90, at 14-15). All inmates were informed and placed on lockdown at the time. We further take judicial notice of recent policies and procedures adopted by LCP to prevent or limit the spread of COVID-19 within the prison. *See Shakur v. Costello*, 230 Fed. App'x 199, 201 (3d Cir. 2007) (per curiam) (taking judicial notice of county prison procedures). Under these new policies and procedures, LCP has suspended contact visits, regular visitation, and visitation from volunteers, including religious leaders. It has implemented aggressive sanitation programs and suspended all programs that utilize "outside" employees. It has prohibited individuals other than prison and medical staff to proceed any further than the reception area. It has limited attorney visits with inmates to meetings through a glass partition in a lawyer visitation room unless written permission is granted by the warden or the deputy warden. It has cancelled all conferences and out-of-county training. It has provided for weekly contact with officials from the state department of corrections. It has posted educational flyers in the blocks and in the reception area. It has also implemented body temperature screening checks for all employees and lawyers as they

7

enter the facility. *United States v. Mendoza*, No. 5:20-mj-00011, 2020 WL 1663361, at *3 & n.4 (M.D. Pa. Apr. 3, 2020).

### *c. Temporary Release Under 18 U.S.C. § 3142(i)*

In his motion and brief, Cagle requests his temporary release under 18 U.S.C. § 3142(i), which allows a judicial officer, by subsequent order, to permit the temporary release of a person to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or another compelling reason. But Cagle is not eligible for release under § 3142(i) because he is not a pretrial detainee. He has been detained pending a supervised release violation hearing.

Under the federal criminal rules, "[t]he provisions of 18 U.S.C. §§ 3142 and 3144 govern *pretrial* release." Fed. R. Crim. P. 46(a) (emphasis added). It is "Rule 32.1(a)(6) [that] governs release pending a hearing on a violation of probation or supervised release." Fed. R. Crim. P. 46(d). Under Rule 32.1(a)(6), a "magistrate judge may release or detain the person under 18 U.S.C. § 3143(a)(1) pending further proceedings." Fed. R. Crim. P. 32.1(a)(6). That statute in turn provides that the person "be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety

of any other person or the community if released." 18 U.S.C. § 3143(a)(1); *see also* Fed. R. Crim. P. 32.1(a)(6) (placing burden of proof on the defendant). Section 3142(i) simply does not apply to a defendant awaiting a supervised released violation hearing. *United States v. Schooler*, No. 17-40002-DDC-ADM, 2020 WL 1935056, at *3–*4 (D. Kan. Apr. 22, 2020); *see also United States v. Leathers*, No. 2:19-cr-633 (WJM), 2020 WL 2219853, at *1 n.1 (D.N.J. May 7, 2020) (noting that § 3142(i) does not apply to a defendant detained under § 3143(a)(1) while awaiting sentencing).

### d. Reconsideration of Detention Under 18 U.S.C. § 3143

The defendant's motion, however, may be properly considered as a motion for reconsideration of our prior detention order under § 3143(a)(1). "In both civil and criminal cases, district courts possess inherent power to reconsider interlocutory orders 'when it is consonant with justice to do so.'" *United States v. Byrd*, No. 1:14-CR-321, 2019 WL 3532159, at *1 (M.D. Pa. Aug. 2, 2019) (quoting *United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973)); *see also Schooler*, 2020 WL 1935056, at *3 (construing motion for release pursuant to § 3142(i) and due to COVID-19 as a motion to reconsider); *United States v. Preston*, No. 3:18-

CR-307-K, 2020 WL 1819888, at *2–*3 & n.1 (N.D. Tex. Apr. 11, 2020) (same).

We originally ordered the defendant's detention on December 23, 2019, based on his waiver of a detention hearing. Now, after considering the information presented in his motion papers and at the hearing conducted on April 24, 2020, we conclude that Cagle should be detained pending a supervised release hearing because he has failed to establish by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or the community if released.

At the motion hearing on April 24, 2020, Cagle, age 55, testified that, prior to his incarceration, he had stopped working because of health issues. In his supporting brief, Cagle had argued that he is in a high-risk category because he suffers from a heart ailment and diabetes (Doc. 92, at 3), but at the telephonic hearing Cagle stated he does not suffer from diabetes and did not explain his heart ailment. Cagle did state that, at the time of his arrest, he was undergoing cancer testing. His testimony, however, was unspecific other than to say the testing related to his colon. He did not refer to any instance during his stay at LCP where he was hospitalized, nor had the need to use a nebulizer or an inhaler. He did

10

not testify whether he takes prescribed medication. At most, Cagle presents only speculative arguments that his confinement in the LCP increases the health risks posed by COVID-19.

If released, Cagle testified that he would live with his aunt, in Scranton, Pennsylvania. He testified that he is willing to abide by all conditions of release. His aunt testified at the telephonic hearing and confirmed that she is willing to allow Cagle to live in her residence.

We find the following additional information in the record of this case to be pertinent: Cagle's prior criminal history, which dates back to July 1981, includes charges for burglary, robbery, larceny, grand larceny, possession of a controlled substance with intent to sell, possession of stolen vehicle, forgery, aggravated identity theft, and access device fraud; the Government's proffer of additional, ongoing criminal activity by Cagle while on supervised release; Cagle's lack of significant community or family ties to this district; and the recommendation of the United States Probation Office that Cagle be detained.

Cagle, of course, also relies on the previously unforeseen impact of the COVID-19 pandemic on the conditions of his confinement while detained at LCP. But other than a single guard who appears to have had

11

no contact with the movant, there have been no confirmed cases of COVID-19 in the LCP. Moreover, LCP has implemented new policies and procedures to protect its population as referenced above. There is no evidence that such measures are, or have been, inadequate. Our court has temporarily continued all court proceedings through May 31, 2020, which should ameliorate a criminal defendant's concerns about assisting his or her attorney in the preparation of a defense. Further, we are confident that LCP will respect the privileged nature of the communications between attorneys and their inmate-clients, as nothing to the contrary has been alleged or otherwise brought to our attention. Finally, despite Cagle's testimony that if released he will abide by all conditions of release, his past conduct guides us on his potential future conduct. We incorporate our discussion above regarding Cagle's extensive prior criminal record.

In the absence of any evidence that LCP is not providing—or is unable to provide—appropriate medical care, we are not persuaded that Cagle should be released. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (recognizing that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone

cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread"). While the court remains sympathetic to Cagle's concerns regarding the possibility of health complications caused by the COVID-19 virus, the mere presence of the virus, even in the detention setting, does not automatically translate to the release of a person accused. *United States v. Williams*, No. PWG-19-8, 2020 WL 1643662, at \*2 (D. Md. Apr. 2, 2020) (denying convicted pre-sentence detainee's motion even where at least five inmates had tested positive for COVID-19 and defendant suffered from allergies and asthma); *United States v. Bilbrough*, No. TDC-20-0033, 2020 WL 1694362 (D. Md. Apr. 7, 2020) (affirming magistrate judge's denial of motion by pretrial detainee who suffered from diabetes); *United States v. Williams*, No. PWG-13-544, 2020 WL 1434130 (D. Md. Mar. 24, 2020) (denying motion by a 67-year-old supervised release violation detainee); *United States v. Penaloza*, No. TDC 19-238, 2020 WL 1555064 (D. Md. Apr. 1, 2020) (denying motion of pretrial detainee who suffered from a heart murmur); *United States v. Jefferson*, No. CCB-19-487, 2020 WL

1332011 (D. Md. Mar. 23, 2020) (denying motion of asthmatic pretrial detainee).

Accordingly, based on the record before us, we are not persuaded to vacate our prior order of detention on reconsideration.

### III. Conclusion

For all the reasons set forth above, Cagle has failed to establish by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or the community if released, as required by 18 U.S.C. § 3143(a)(1) and Fed. R. Crim. P. 32.1(a)(6). Therefore, his motion (Doc. 88) is denied.

An appropriate order follows.

*s/Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated: May 11, 2020